IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK CASISSA,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST REPUBLIC BANK, a division of,<br>MERRILL LYNCH BANK & TRUST COMPANY,<br>FSB,<br><br>    Defendant.<br>_____/ | No. C 09-04129 CW<br><br>ORDER DENYING<br>DEFENDANT'S MOTION<br>TO DISMISS<br>(Docket No. 32) |
| ELIZABETH RIGGINS,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST REPUBLIC BANK, a division of,<br>MERRILL LYNCH BANK & TRUST COMPANY,<br>FSB,<br><br>    Defendant.<br>_____/ | (consolidated with<br>09-4129) |

   Plaintiffs Frederick Casissa and Elizabeth Riggins bring claims against Defendant First Republic Bank concerning the termination of their employment.  Defendant moves to dismiss Plaintiffs' Second Amended Complaint (2AC).  Plaintiffs oppose the motion.  The motion was heard on July 1, 2010.  Having considered oral argument and all the papers submitted by the parties, the Court DENIES Defendant's Motion.

BACKGROUND

Plaintiffs are California residents who were employees of Defendant. During the relevant period, Defendant appears to have been a division of Merrill Lynch Bank and Trust, FSB. The following allegations are contained in Plaintiffs' complaint.

Defendant employed Casissa as "the Bank Secrecy Act/Anti-Money Laundering . . . compliance officer" and Riggins as a "Bank Anti-Money Laundering Analyst." 2AC ¶¶ 7 and 10. Plaintiffs maintain they were under legal duties to, among other things, report evidence of suspicious activity to the Financial Crimes Enforcement Network (FCEN), a bureau of the U.S. Department of the Treasury.

On or about October 31, 2007, Riggins learned through a news article that two of Defendant's customers were "suspected of operating an unlawful 'Ponzi' scheme" and that their assets had been seized by law enforcement authorities. 2AC ¶ 17. The article indicated that Defendant held "$40 million in defaulted loans" by the two customers. 2AC ¶ 17. Riggins informed Casissa of the report. In turn, Casissa contacted Edward Dobranski, his immediate supervisor and vice president and general counsel for Defendant. Casissa informed Dobranski that Defendant was required to file a Suspicious Activity Report (SAR) regarding the two customers. Dobranski instructed Plaintiffs "to take no actions" concerning the report. 2AC ¶ 20. Plaintiffs then told Dobranski that they "refused to participate in any conduct contrary to law and regulations governing their duties and responsibilities at the Bank, including specifically not filing a SAR regarding" these two customers. 2AC ¶ 21. Thereafter, Plaintiffs investigated the customers' accounts, at the behest of Merrill Lynch executives.

Plaintiffs complain that their investigation was impeded by the deliberate withholding of documents.

On or about March 11, 2008, Riggins learned that, in August, 2007, Defendant had been served with a subpoena for the banking records of another customer. This subpoena "had been deliberately withheld from" Plaintiffs by Dobranski and other employees. 2AC ¶ 25. When Casissa asked Dobranski about the subpoena, Dobranski acknowledged its existence and instructed Plaintiffs "not to worry and to take no action." 2AC ¶ 28. Plaintiffs believed that the subpoena required the filing of a SAR and again stated to Dobranski that they refused to participate in any conduct contrary to law.

On March 14, 2008, Casissa informed Robert Werner at Merrill Lynch about his concerns regarding the subpoena. Werner stated that he had no prior knowledge of the subpoena. Plaintiffs again reiterated that they refused to participate in any conduct contrary to law.

Beginning in or about March, 2008, Defendant engaged in acts of retaliation against Plaintiffs that prevented them from performing their job duties, including withholding information, imposing "unnecessary and punitive administrative duties and responsibilities," hiring "an inexperienced and unqualified individual as 'Chief Risk Officer,'" and excluding them from meetings. 2AC ¶ 32. This alleged chain of events culminated in the termination of Plaintiffs' employment on May 29, 2009. Defendant indicated to Plaintiffs that the terminations were the result of restructuring and reorganization. However, Plaintiffs contend that their positions were "posted on the Internet." 2AC ¶ 34. Casissa's position was subsequently filled.

3

Plaintiffs bring claims under California law, asserting that Defendant violated California Labor Code section 1102.5(c) and terminated their employment in violation of public policy.

On April 16, 2010, the Court dismissed Plaintiffs' First Amended Complaint, but granted them leave to amend to plead factual allegations in support of their claims. Plaintiffs filed their current complaint on April 30, 2010.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

## DISCUSSION

I.  Claims under California Labor Code Section 1102.5

California Labor Code section 1102.5(c) forbids an employer from taking retaliatory action against an employee for "refusing to participate in an activity that would result in a violation of

4

state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." The California Legislature intended "to protect employees who refuse to act at the direction of their employer or refuse to participate in activities of an employer that would result in a violation of law." Act of Sep. 22, 2003, ch. 484, § 1, 2003 Cal. Legis. Serv. 484.

To plead a prima facie case under section 1102.5, Plaintiffs must allege that (1) they engaged in a protected activity, (2) Defendant subjected them to adverse employment actions and (3) there is a causal link between the two. Mokler v. County of Orange, 157 Cal. App. 4th 121, 138 (2007). Defendant contends that Plaintiffs fail to plead that they engaged in protected activity and retaliatory causation.

Although Plaintiffs failed to plead protected activity in their first amended complaint, they do so here. Under 31 C.F.R. § 103.18(a)(1), every bank is required to file "a report of any suspicious transaction relevant to a possible violation of law or regulation." See also 12 C.F.R. § 353.3(a)(2) (requiring a report whenever "the bank detects any known or suspected federal criminal violation, or pattern of criminal violations . . . involving a transaction or transactions conducted through the bank, and involving or aggregating $5,000 or more in funds or other assets, where the bank believes it was . . . used to facilitate a criminal transaction, and the bank has a substantial basis for identifying a possible suspect or group of suspects"). Plaintiffs cite a news article, which suggested that two of Defendant's customers were involved in an unlawful "Ponzi" scheme that may have implicated funds obtained through a loan held by Defendant. This article

5

could have triggered Defendant's federal reporting obligation. As a result, Dobranski's direction to Plaintiffs to do nothing could have prevented Defendant from fulfilling its reporting obligation. By pleading that they refused to accede to this instruction, which could have led to the violation of federal law, Plaintiffs allege protected activity.

In addition, Plaintiffs' allegations concerning the grand jury subpoena support their claims.[1] They cite a manual, published by the Federal Financial Institutions Examination Council, which states that "the receipt of a grand jury subpoena should cause a bank to review account activity for the relevant customer." See Fed. Fin. Institutions Examination Council, <u>Bank Secrecy Act/Anti-Money Laundering Examination Manual</u> 70 (2010), <u>available at</u> http://www.ffiec.gov/bsa_aml_infobase/documents/BSA_AML_Man_2010.pdf.[2] They also allege that, until they confronted him about it, Dobranski withheld the subpoena from them and his superiors. Because the subpoena could have triggered Defendant's reporting obligation, Dobranski's instruction to do nothing, along with the alleged suppression of the subpoena, could have resulted in the

---

[1] At the hearing on the motion, Plaintiffs' counsel represented that Plaintiffs' Second Amended Complaint contains several allegations, to which he referred. For instance, he asserted that the complaint avers that the purported subpoena "sat on the desk of a bank employee whose name is Sunshine Smith for months." He also suggested that Plaintiffs filed a SAR, in contravention of Dobranski's instructions. No such allegations appear in the complaint. Plaintiffs' counsel is reminded of his obligation under California Rule of Professional Conduct 5-200(C), which requires that attorneys "shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law."

[2] Notably, however, the manual also states that a subpoena "does not, by itself, require the filing of a SAR by the bank." <u>Id.</u>

6

violation of federal law.  While the allegations concerning the subpoena are somewhat sparse, they are sufficient to state protected activity.

With regard to adverse employment actions, Plaintiffs allege that, around March 11, 2008, Defendant began to hamper their ability to do their jobs.  This included the withholding of information and their exclusion from meetings.  These acts could suffice as adverse employment actions.  See Yanowitz, 36 Cal. 4th at 1054 (stating that adverse employment actions include those "that are reasonably likely to adversely and materially affect an employee's job performance").  Plaintiffs assert these acts culminated in the termination of their employment in May, 2009.  Based on these allegations, Plaintiffs adequately plead that Defendant took adverse employment actions against them.

Concerning causation, Plaintiffs do not allege facts that support a direct link between their alleged protected activity and Defendant's alleged retaliatory conduct.  Instead, they argue that the temporal proximity of Defendant's retaliation to their rejection of Dobranski's instruction supports an inference of causation.  See, e.g., Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69-70 (2000).  Because the alleged retaliatory acts began around the time Plaintiffs refused to comply with Dobranski's instruction concerning the subpoena, Plaintiffs sufficiently plead a causal link.

Accordingly, Plaintiffs state claims under section 1102.5(c) based on their refusal to follow Dobranski's instructions to take no action concerning the news report and the subpoena.

II. Claims for Wrongful Termination in Violation of Public Policy

Under California law, an employee may maintain a tort cause of action against his or her employer when the employer's discharge of the employee contravenes fundamental public policy. Foley v. Interactive Data Corp., 47 Cal. 3d 654, 666 (1988). Such claims are often referred to as Tameny claims, after the decision in Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167, 176-177 (1980). A claim for wrongful termination in violation of public policy must be based on a fundamental policy established by a constitutional, statutory or regulatory provision. Green v. Ralee Eng'q Co., 19 Cal. 4th 66, 76, 90 (1998).

Plaintiffs' Tameny causes of action rest in part on their section 1102.5(c) claims. Thus, Plaintiffs' Tameny claims may go forward to the extent that they implicate the same conduct that supports their claims under 1102.5(c).

CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss. (Docket No. 32.)

IT IS SO ORDERED.

Dated: July 19, 2010

CLAUDIA WILKEN
United States District Judge